AO 91 (Rev. 02/09) Criminal Complaint

# United States District Court

### for the
### Western District of New York

| | |
|---|---|
| **United States of America**<br>**v.**<br><br>**Jason SIPLIN a/k/a J,**<br>**Jason SIPLIN, JR. a/k/a Mush,**<br>**Ernest GAMBLE a/k/a Dred,**<br>**Lytrice JACKSON a/k/a Storm,**<br>**Timothy GRANISON, and**<br>**Dkeidron DUBLIN.**<br>*Defendants* | Case No. 21-MJ-612 |

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about and between the month of August 2020 and May 19, 2021 in the Western District of New York, and elsewhere, **JASON SIPLIN, JASON SIPLIN, JR., ERNEST GAMBLE, LYTRICE JACKSON, TIMOTHY GRANISON, DKEIDRON DUBLIN,** and others known and unknown, did combine, conspire and agree to possess with intent to distribute, and to distribute, at least 280 grams of cocaine base, a Schedule II controlled substance, and at least 500 grams of cocaine, a Schedule II controlled substance, in violation of Title 21, United States Code, Sections 841(a)(1), 841(b)(1)(A), 841(b)(1)(B) and 841(b)(1)(C), **all in violation of Title 21, United States Code, Section 846**;

AND further, that on or about May 19, 2021, in the Western District of New York, **DKEIDRON DUBLIN**, in furtherance of a drug trafficking crime for which he may be prosecuted in a court of the United States, that is, conspiracy to possess with intent to distribute, and to distribute, controlled substances, as alleged above, did knowingly and unlawfully possess a firearm, **in violation of Title 18, United States Code, Section 924(c)(1)(A)(i).**

This Criminal Complaint is based on these facts:

☒    Continued on the attached Affidavit.

_____
*Complainant's signature*

MATTHEW D. HUDSON, Special Agent
Homeland Security Investigations
*Printed name and title*

Application submitted electronically by email in .pdf format. Oath administered, and contents and signature attested to me and before me as true and accurate by telephone pursuant to Fed.R.Crim.P. 4.1 and 4(d) on:

Date: June 3, 2021

City and State:   Rochester, New York

_____
*Judge's signature*

HONORABLE MARK W. PEDERSEN
United States Magistrate Judge, WDNY
*Printed name and title*

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA

    v.         21-MJ-512

JASON SIPLIN a/k/a J,
JASON SIPLIN, JR. a/k/a Mush,
ERNEST GAMBLE a/k/a Dred,
LYTRICE JACKSON a/k/a Storm,
TIMOTHY GRANISON, and
DKEIDRON DUBLIN,

   Defendants.

_____

STATE OF NEW YORK )
COUNTY OF MONROE )  SS:
CITY OF ROCHESTER )

## AFFIDAVIT IN SUPPORT OF CRIMINAL COMPLAINT

Matthew D. Hudson, being duly sworn, deposes and states:

1. I am a Special Agent with the Department of Homeland Security (DHS), Homeland Security Investigations (HSI), and have been so employed since November 2019. I am currently assigned to the HSI Buffalo Border Enforcement Security Task Force (BEST) and attached to the Greater Rochester Area Narcotics Enforcement Team (GRANET). My responsibilities include investigating violations of federal and state criminal laws, including crimes involving smuggling and narcotics trafficking. As such, I am an "investigative or law enforcement officer" within the meaning of Title 18, United States Code, Section 2510(7), that is, an officer of the United States who is empowered by law to conduct investigations and to make arrests for offenses enumerated in Title 18, United States Code, Section 2516, and

1

Title 21 of the United States Code.

2.      This affidavit is submitted in support of a Criminal Complaint charging Jason SIPLIN a/k/a J, Jason SIPLIN, JR. a/k/a Mush, Ernest GAMBLE a/k/a Dred, Lytrice JACKSON a/k/a Storm, Timothy GRANISON, and Dkeidron DUBLIN with a violation of Title 21, United States Code, Section 846 (conspiracy to possess with intent to distribute, and distribute, at least 280 grams or more of cocaine base, a Schedule II controlled substance; and at least 500 grams or more of cocaine, a Schedule II controlled substance), and that Dkeidron DUBLIN also committed a violation of Title 18, United States Code, Section 924(c)(1)(A)(i) (possession of a firearm in furtherance of a drug trafficking crime).

3.      As more fully described below, the facts in this affidavit are based on a combination of my personal participation in this investigation, my review of police reports filed in connection with this investigation, conversations with other law enforcement officers involved in this investigation, and my review of conversations that have been intercepted pursuant to court-authorized eavesdropping warrants.  The conclusions drawn in this affidavit are based on my training and experience as well as the advice of other experienced federal, state and local narcotics investigators. Since this affidavit is being submitted for a limited purpose, I have not included every fact that I know concerning this investigation. Rather, I have set forth only those facts that relate to the issue of whether probable cause exists to believe that the above-named defendants committed the above-described offenses.  In support thereof, I respectfully state the following:

## AFFIANT'S BACKGROUND

4.      I have been employed as an HSI Special Agent since November 2019.  During my tenure with HSI, I have participated in numerous narcotics investigations during which I

have conducted physical and wire surveillance, executed search warrants, and reviewed and analyzed recorded conversations and records of drug traffickers. Through my training, education, and experience, I have become familiar with the manner in which illegal drugs (including cocaine, cocaine base, and others) are imported, stored, transported, and distributed, as well as methods of payment for such drugs. I am also familiar with the manner in which proceeds from narcotics trafficking are laundered, and the efforts and strategies drug traffickers will employ to avoid detection by law enforcement.  I am aware of the fact that those who distribute controlled substances often use cryptic, coded or otherwise indirect language when discussing their illegal activities over the telephone.  I am also aware of the fact that drug traffickers will often add adulterants or other additives to their controlled substances to increase the quantity of their distributable product, thereby increasing their profits.  I know that drug traffickers often use firearms in order to protect themselves, their narcotics and drug proceeds from rival drug traffickers and/or potential robbers. Therefore, drug traffickers frequently are in possession of firearms for these purposes.

## BACKGROUND OF INVESTIGATION

5.     The Greater Rochester Area Narcotics Enforcement Team (hereafter "GRANET") and other cooperating law enforcement agencies have been investigating a drug trafficking organization led by Jason SIPLIN (hereafter the "SIPLIN DTO"). The investigation has used various investigative techniques, including confidential informants, audio recorded purchases of cocaine base[1], surveillance (by both plain clothes officers as well

---

[1] Cocaine base is more commonly known as "crack" or "crack cocaine." Whenever I use those terms throughout this affidavit I am referring to cocaine base.

as covert cameras), search warrants and state eavesdropping warrants that were used to monitor and record conversations of members of the SIPLIN DTO.

6.     The members of the SIPLIN DTO were using cellular phones to conduct their drug business. Over the course of this investigation numerous eavesdropping warrants were obtained for telephone numbers used by members of the SIPLIN DTO. All of the intercepted telephone calls, text messages, and corresponding location/ping data referred to in this affidavit were obtained through lawful eavesdropping warrants, issued by the Honorable Michael Dollinger, Monroe County Court Judge, on various dates over the course of this investigation.

7.     Based on my training and experience, drug dealers and traffickers will frequently use multiple cellular phones and will regularly drop or change telephone numbers in an effort to evade law enforcement. For example, Jason SIPLIN used at least seven different telephone numbers over the course of this investigation. Often drug dealers will use telephone numbers that have services subscribed to in the name of another individual, fake names, or have no user information at all. The users of the telephone numbers described throughout this affidavit have been identified by various means, including but not limited to personal knowledge and observations by officers on surveillance, information provided by reliable confidential sources, vehicle stops of targets, video footage, Department of Motor Vehicle driver's license and automobile registration records, and the names and nicknames used by interceptees to address one another during intercepted telephone conversations. As this was a long-term investigation, members of the investigative team also became increasingly familiar with the sound of each target's voice as the case proceeded.

## OVERVIEW OF CONSPIRACY

8.       The investigation has revealed that since at least August 2020, the SIPLIN DTO has been distributing large quantities of cocaine and cocaine base in the City of Rochester and the surrounding areas.  Based upon the evidence discovered during the course of the investigation, it was revealed that Jason SIPLIN, who resides at 14 Elwood Drive, Rochester, New York, is the leader of this organization. Jason SIPLIN regularly obtains large quantities of cocaine that he in turn uses to supply a drug house located at 230 Glenwood Avenue, Rochester, New York, where cocaine and cocaine base is sold to individual drug users. It is believed that SIPLIN may have multiple storage locations for narcotics and United States currency. At least one of SIPLIN's storage locations for narcotics is the premises known as 62 Clifton Street, Rochester, New York. The investigation has revealed that SIPLIN regularly supplies or "re-ups" 230 Glenwood Avenue with cocaine base stored at 62 Clifton Street. SIPLIN's DTO is composed of a number of individuals who fulfill various roles in furtherance of his narcotics trafficking operation. SIPLIN would obtain bulk quantities of cocaine, which would then be cooked or transformed into cocaine base (crack cocaine) by a member of the SIPLIN DTO. The cocaine base was then broken down into individual units and bagged for street sale. Members of the SIPLIN DTO also staffed the drug house at 230 Glenwood Avenue, where the cocaine base was sold to individual drug users who traveled to the location on foot or in vehicles. SIPLIN's upper level workers are believed to include his son, Jason SIPLIN, JR. a/k/a Mush, who resides at 2013 Norton Street, Rochester, New York, among others. Ernest GAMBLE a/k/a Dred and Lytrice JACKSON a/k/a Storm are among a number of individuals who packaged drugs for street sale and conducted hand-to-hand drug transactions out of 230 Glenwood Avenue on behalf of the SIPLIN DTO. For

approximately six months leading up to the arrest of Jason SIPLIN law enforcement has utilized covert cameras directed at various locations pertinent to the investigation, including the rear of 230 Glenwood Avenue. Based on my training and experience and conversations with other experienced narcotics investigators, your affiant has observed foot traffic and vehicle traffic to the location that is consistent with roughly forty to fifty drug transactions each day. I also believe SIPLIN supplies bulk quantities of cocaine and cocaine base to other drug dealers who then further distribute these substances. Based on my training, experience and knowledge of the investigation, I believe SIPLIN supplied bulk quantities of cocaine to Timothy GRANISON, which GRANISON then distributed to other narcotics traffickers, including Dkeidron DUBLIN.

## RELEVANT LOCATIONS DESCRIBED IN THIS AFFIDAVIT

9.      As an aid to the Court, the following locations are relevant to the Court's consideration:

    a. **230 Glenwood Avenue, Rochester, New York:** This house is used by the SIPLIN DTO to distribute cocaine and cocaine base to individual drug users. Foot and vehicle traffic to this address is consistently heavy throughout the day and night;

    b. **62 Clifton Street, Rochester, New York:** This is Jason SIPLIN's primary stash house for bulk cocaine and cocaine base. Cocaine base is also cooked or prepared at this location;

    c. **14 Elwood Drive, Rochester, New York:** The residence of Jason SIPLIN;

    d. **2013 Norton Street, Rochester, New York:** The residence of Jason SIPLIN, JR.;

    e. **93 Woodman Park, Rochester, New York:** The residence of Timothy GRANISON and his wife, L.W.;

    f.  **5 Birch Crescent, Apartment 3, Rochester, New York:** The residence of Dkeidron DUBLIN.

## CONTROLLED BUYS

10.    Between August 2020 and the last week in April 2021, numerous controlled-buy operations were conducted by the investigative team utilizing one of two confidential informants (hereafter "CI-1" and "CI-2")[2]. Prior to each controlled-buy the CI would be searched for drugs, money and contraband always with negative results. Further, prior to each operation the CI would be fitted with an audio recording and transmitting device. This device would record the CI's conversations with the individuals encountered by the CI during the controlled-buy operation. The device also allowed law enforcement to monitor for the CI's safety while inside of a target location. For each controlled-buy, visual surveillance was conducted by officers who could observe the CI walking to and from target locations. The CI was provided with official law enforcement funds to purchase narcotics during each controlled-buy operation. After each controlled-buy, members of the law enforcement team would follow the CI from the target location to a predetermined meeting location where the CI would turn over the purchased cocaine base, the recording device, and thereafter be debriefed. After each controlled-buy, the cocaine base was field tested by a properly trained law enforcement officer. The field tests conducted in each of the controlled-buy operations enumerated below all returned positive results for the presence of cocaine. What follows is a brief description of the numerous operations in which cocaine or cocaine base was successfully purchased from a member of the SIPLIN

---

[2] CI-1 and CI-2 are paid confidential informants who have assisted law enforcement in this investigation as well as other past investigations that have led to successful search warrants, arrests and seizures of evidence. Their information has proven to be truthful, reliable and accurate in this and other investigations. The information provided by CI-1 and CI-2 over the course of this investigation has also been corroborated where possible by other investigative techniques.

DTO out of 230 Glenwood Avenue, Rochester, New York, over the course of this investigation:

11.     **During the 4th full week of August 2020**, at the direction of law enforcement CI-1 called SIPLIN at (585) 259-8246 and arranged to purchase a quantity of cocaine base. SIPLIN told CI-1 to go to the house at 230 Glenwood Avenue.  Following that conversation, CI-1 went to the back door of 230 Glenwood Avenue.  A black male that the CI-1 knew as "Red" answered the door. CI-1 described "Red" as a male in his 50's, with light skin and freckles.  CI-1 had a brief conversation with Red about purchasing crack cocaine and handed Red a quantity of U.S. currency. In exchange Red handed CI-1 a quantity of white, rock-like substance that appeared to be crack cocaine.  A short time later, CI-1 left the location, and came back to the undercover vehicle. CI-1 then turned over a quantity of white, rock-like substance to the undercover officers monitoring the operation, that appeared to be crack cocaine. The substance later field tested positive for the presence of cocaine.

12.     **During the 4th week of September 2020,** at the direction of law enforcement, CI-1 called (585)530-7705 and arranged to purchase a quantity of crack cocaine. This number was obtained prior to the operation and was believed to be used by one of SIPLIN's associates by the name of Ernest GAMBLE. The male on the phone told CI-1 to go to the house at 230 Glenwood Avenue. While under surveillance by members of GRANET, CI-1 went to the back door of 230 Glenwood Avenue. A black male that the CI-1 knew as "Dred" answered the door.  Dred was described by CI-1 as a black male in his 20's with dreadlocks. Through further investigation, Dred was later identified to be Ernest GAMBLE. CI-1 had a brief conversation about purchasing crack cocaine from Dred and handed him a quantity of U.S. currency. In exchange Dred handed CI-1 a quantity of white, rock-like substance that appeared to be crack cocaine.  A short time later, CI-1 left the location, and came back

to the undercover vehicle. CI-1 then provided the investigators with the white, rock-like substance purchased from the SIPLIN DTO on this date, that appeared to be crack cocaine. The substance later field tested positive for the presence of cocaine.

13.     **During the first week of October 2020**, at the direction of law enforcement CI-1 called Ernest GAMBLE at (585) 530-7705, and heard a recording stating that phone number was unable to accept calls at that time.  A plan was then formulated for CI-1 to go directly to 230 Glenwood Avenue.  Law enforcement provided CI-1 with a quantity of U.S. currency.  While under surveillance by members of GRANET, CI-1 went to the back door of 230 Glenwood Avenue. A short time later, CI-1 left the location, and returned to the undercover vehicle. CI-1 then handed the investigators a quantity of white, rock-like substance purchased from the SIPLIN DTO, that appeared to be crack cocaine. The substance later field tested positive for the presence of cocaine. During the debriefing CI-1 advised that he/she walked to the enclosed porch at the rear of 230 Glenwood Avenue, knocked on the door, and was greeted by Ernest GAMBLE. CI-1 had a brief conversation with GAMBLE about purchasing crack cocaine and handed GAMBLE an amount of U.S. currency. In exchange GAMBLE handed CI-1 a quantity of white, rock-like substance that appeared to be crack cocaine.

14.     **During the second week of October 2020,** at the direction of law enforcement, CI-1 attempted to reach Ernest GAMBLE at (585) 530-7705 several times.  Each time a recording stated that the number was unable to take phone calls. Thereafter, a plan was formulated for CI-1 to go directly to 230 Glenwood Avenue in an effort to make contact with GAMBLE. CI-1 walked directly to 230 Glenwood Avenue, Rear Apartment, and knocked on the door. Ernest GAMBLE answered the door, at which time CI-1 had a conversation with

GAMBLE about his phone number.  GAMBLE provided CI-1 with his new telephone number which was (585) 820-7677, for CI-1 to use for future drug transactions. Shortly thereafter CI-1 left the location.

15. **During the second full week of October 2020**, at the direction of law enforcement CI-1 called Ernest GAMBLE at (585) 820-7677. A male answered the phone and CI-1 recognized the voice as Ernest GAMBLE's.   CI-1 had a conversation with GAMBLE over the phone about purchasing crack cocaine at 230 Glenwood Avenue.  While under surveillance by law enforcement, CI-1 went to the back door of 230 Glenwood Avenue and knocked on the door.  Ernest GAMBLE opened the door and allowed CI-1 into the location. CI-1 had a brief conversation about purchasing crack cocaine and gave GAMBLE a quantity of U.S. currency. In exchange GAMBLE handed CI-1 a quantity of white, rock-like substance that appeared to be crack cocaine. CI-1 left the location and returned to the undercover vehicle. CI-1 then handed law enforcement the white, rock-like substance purchased from GAMBLE, that appeared to be crack cocaine. The substance later field tested positive for the presence of cocaine.

16. **During the third week of February 2021,** at the direction of law enforcement, CI-2 attempted to purchase cocaine base from members of the SIPLIN DTO at 230 Glenwood Avenue. While under surveillance by members of the investigative team, CI-2 went to the back door of 230 Glenwood Avenue. A short time later, CI-2 left the location, and returned to the undercover vehicle.  CI-2 then handed the investigators a quantity of white, rock-like substance that appeared to be crack cocaine, which later field tested positive for the presence of cocaine. During the debriefing CI-2 advised that he/she walked to the enclosed porch at the rear of 230 Glenwood Avenue, and knocked on the door.  An

unknown male greeted CI-2 through the door and CI-2 had a brief conversation with this person about purchasing crack cocaine. A price and quantity were agreed upon at which point CI-2 handed the unknown male an amount of U.S. currency. In exchange, the unknown male handed CI-2 a quantity of white, rock-like substance that appeared to be crack cocaine.

17.     A second controlled buy was conducted **during the third week of February 2021**. While under surveillance by law enforcement, CI-2 went to the back door of 230 Glenwood Avenue. A short time later, CI-2 left the location, and returned to the undercover vehicle.   CI-2 handed law enforcement a quantity of white, rock-like substance that appeared to be crack cocaine, and later field tested positive for the presence of cocaine. During the debriefing CI-2 advised that he/she walked to the enclosed porch at the rear of 230 Glenwood Avenue, and knocked on the door. CI-2 had a brief conversation about purchasing crack cocaine with an unknown female, who directed an unknown male to get the product for CI-2 in exchange for U.S. currency. CI-2 handed the unknown male an amount of U.S. currency and in exchange the unknown male handed CI-2 a quantity of white, rock-like substance that appeared to be crack cocaine.  CI-2 obtained a phone number for the unknown female to use for future drug transactions: (585) 285-3463.

18.     **During the fourth week of February 2021,** law enforcement formulated a plan to purchase crack cocaine from 230 Glenwood Avenue using telephone number (585) 285-3463 obtained during the previous operation.  At the direction of law enforcement, a controlled call was made to that number and CI-2 arranged to purchase drugs from 230 Glenwood Avenue.  While under surveillance by undercover investigators, CI-2 went to the back door of 230 Glenwood Avenue.  A short time later, CI-2 left the location and returned

11

to the undercover vehicle. CI-2 handed law enforcement the white, rock-like substance purchased on this date that appeared to be crack cocaine. The substance later field tested positive for the presence of cocaine. During the debriefing, CI-2 advised that he/she had walked to the enclosed porch at the rear of 230 Glenwood Avenue, and knocked on the door.  An unknown male greeted CI-2 through the door and after a brief conversation about purchasing crack cocaine, CI-2 was allowed into the house.  CI-2 handed the unknown male an amount of U.S. currency and in exchange the unknown male handed CI-2 a quantity of white, rock-like substance that appeared to be crack cocaine.

19.     A second controlled buy was conducted **during the fourth week of February 2021**. At the direction of law enforcement, CI-2 called telephone number (585) 285-3463 and made arrangements to purchase crack cocaine. Shortly thereafter, CI-2 traveled to the location while under surveillance and went to the back door of 230 Glenwood Avenue. A short time later, CI-2 left the location, and returned to the undercover vehicle.  CI-2 then turned provided the investigators with a quantity of white, rock-like substance that appeared to be crack cocaine, purchased from the SIPLIN DTO that day. The substance later field tested positive for the presence of cocaine. During the debriefing, CI-2 advised that he/she walked to the enclosed porch at the rear of 230 Glenwood Avenue and knocked on the door. CI-2 was met by a black female and a young black male with dreadlocks.  CI-2 had a brief conversation about purchasing crack cocaine and a price and quantity were agreed upon. CI-2 handed the unknown male an amount of U.S. currency and in exchange the unknown male handed CI-2 a quantity of white, rock-like substance that appeared to be crack cocaine.

20.     **During the first week of March 2021**, CI-2 called telephone number (585) 285-3463 at the direction of law enforcement. During the controlled call CI-1 arranged to

purchase a quantity of crack cocaine from 230 Glenwood Avenue. Later that day, CI-2 went to the back door of 230 Glenwood Avenue.  A short time later, CI-2 left the location and returned to the undercover vehicle.  At that time CI-2 handed law enforcement a white, rock-like substance that appeared to be crack cocaine, purchased that day from 230 Glenwood Avenue. The substance later field tested positive for the presence of cocaine. During the debriefing, CI-2 advised that he/she walked to the enclosed porch at the rear of 230 Glenwood Avenue and knocked on the door.  CI-2 was met by a black female known as "Storm." CI-2 had a brief conversation about purchasing crack cocaine from Storm in exchange for U.S. currency. Shortly thereafter, CI-2 purchased a quantity of crack cocaine from Storm in exchange for U.S. currency. Storm was later identified as the defendant Lytrice JACKSON.

21.     **During the second week of March 2021**, CI-2 called (585) 285-3463 at the direction of law enforcement, and an arranged to purchase crack cocaine from 230 Glenwood Avenue. Shortly thereafter, CI-2 went to the back door of 230 Glenwood Avenue while under surveillance.  A short time later, CI-2 left the location, and returned to the undercover vehicle.  At that time CI-2 provided law enforcement with the white, rock-like substance purchased that day, which appeared to be crack cocaine. The substance later field tested positive for the presence of cocaine. During the debriefing, CI-2 advised that he/she walked to the enclosed porch at the rear of 230 Glenwood Avenue and knocked on the door. CI-2 was met by a male black who identified himself as "J."  CI-2 had a brief conversation about purchasing crack cocaine from J, and a price and quantity was agreed upon. CI-2 handed J an amount of U.S. currency and in exchange, J handed CI-2 a quantity of white, rock-like substance that appeared to be crack cocaine. CI-2 later identified the male "J" as

the defendant Jason SIPLIN.  Additionally, CI-2 was given the phone number (585) 867-3073 to call in order to reach Jason SIPLIN in the future. It should also be noted that during this controlled buy, law enforcement was conducting in person and pole camera surveillance. Members of the investigative team observed that SIPLIN'S rental vehicle (a grey Subaru with PA license plate LKM6294) was parked in front of 230 Glenwood Avenue during the above transaction.  Prior to the transaction, surveillance shows that the same vehicle was parked at 62 Clifton Street.

22.     **During the third week of March 2021**, at the direction of law enforcement CI-2 called telephone number (585) 867-3073 and arranged to purchase narcotics from 230 Glenwood Avenue. Shortly thereafter, CI-2 traveled to the location while under surveillance and went to the back door of 230 Glenwood Avenue.  A short time later, CI-2 left the location, and returned to the undercover vehicle. At that time CI-2 provided law enforcement with the white, rock-like substance purchased from the SIPLIN DTO that day, which appeared to be crack cocaine. The substance later field tested positive for the presence of cocaine.  During the debriefing CI-2 advised that he/she walked to the enclosed porch at the rear of 230 Glenwood Avenue and knocked on the door, where CI-2 was met by a male black whom CI-2 knew as "J." CI-2 had a brief conversation about purchasing crack cocaine from J.  CI-2 handed the male an amount of U.S. currency and in exchange, J handed CI-2 a quantity of white, rock-like substance that appeared to be crack cocaine. CI-2 then left the location and returned to the undercover vehicle. CI-2 identified the male "J" as Jason SIPLIN and reported SIPLIN's telephone number to be (585) 867-3073.

23.     **During the 4th week of March 2021**, at the direction of law enforcement CI-2 called telephone number (585) 867-3073 and arranged to purchase narcotics from the

SIPLIN DTO at 230 Glenwood Avenue.  Shortly thereafter, CI-2 traveled to the location while under surveillance and went to the back door of 230 Glenwood Avenue. A short time later, CI-2 left the location and returned to the undercover vehicle.  At that time CI-2 provided law enforcement with the white, rock-like substance purchased from the SIPLIN DTO that day, which appeared to be crack cocaine. The substance later field tested positive for the presence of cocaine. During a debriefing CI-2 advised that he/she walked to the enclosed porch at the rear of 230 Glenwood Avenue and knocked on the door.  CI-2 was met by SIPLIN who had arrived from outside of the house.  CI-2 had a brief conversation about purchasing crack cocaine from SIPLIN. Thereafter, CI-2 handed SIPLIN U.S. currency and in exchange, SIPLIN handed CI-2 a quantity of white, rock-like substance that appeared to be crack cocaine, directly from his pocket.  After the transaction CI-2 returned to the undercover vehicle and turned over the white, rock-like substance purchased from SIPLIN. CI-2 identified SIPLIN as the person who had sold the crack cocaine to CI-2.

24.    **During the last week of March 2021**, at the direction of law enforcement CI-2 called telephone number (585) 867-3073 and arranged to purchase narcotics from 230 Glenwood Avenue. Shortly thereafter, CI-2 traveled to the location while under surveillance and went to the back door of 230 Glenwood Avenue. A short time later, CI-2 left the location, and returned to the undercover vehicle.  At that time CI-2 provided investigators with the white, rock-like substance purchased from the SIPLIN DTO that day, which appeared to be crack cocaine. The substance later field tested positive for the presence of cocaine. During the debriefing, CI-2 advised that he/she walked to the enclosed porch at the rear of 230 Glenwood Avenue, and knocked on the door.  CI-2 was allowed inside and observed SIPLIN in the house.  CI-2 had a brief conversation with SIPLIN about

purchasing crack cocaine and a price and quantity were agreed upon.  SIPLIN said he would be right back and then left 230 Glenwood Avenue before returning a short time later with a quantity of crack cocaine.  CI-2 handed SIPLIN an amount of U.S. currency and in exchange, SIPLIN handed CI-2 a quantity of white, rock-like substance that appeared to be crack cocaine, directly from his pocket. CI-2 then left the location and returned to the undercover vehicle where CI-2 turned over the white, rock-like substance to investigators. During the same time frame in which this transaction took place, law enforcement observed SIPLIN exit the rear of 230 Glenwood Avenue and enter the rear of 8 Rainier Street.  After a short while SIPLIN was observed exiting 8 Rainier and returning to 230 Glenwood Avenue.

25.     **During the second full week of April, 2021**, law enforcement formulated a plan to have CI-2 attempt to purchase narcotics from the SIPLIN DTO at 230 Glenwood Avenue. At the direction of law enforcement, CI-2 traveled to the location while under surveillance and went to the back door of 230 Glenwood Avenue.  A short time later CI-2 left the location and returned to the undercover vehicle. At that time CI-2 provided investigators with the white, rock-like substance purchased from the SIPLIN DTO that day, which appeared to be crack cocaine. The substance later field tested positive for the presence of cocaine. During the debriefing, CI-2 advised that he/she walked to the enclosed porch at the rear of 230 Glenwood Avenue, and knocked on the door. CI-2 was let inside and spoke to a male who went by the name "Mush."  CI-2 had a brief conversation with Mush about purchasing crack cocaine, and a price and quantity were agreed upon. CI-2 handed Mush an amount of U.S.  currency and in exchange Mush handed CI-2 a quantity of white, rock-like substance that appeared to be crack cocaine.  CI-2 later identified Jason SIPLIN, JR. as

the man named Mush who completed this transaction.

26.     **During the last week of April 2021**, law enforcement formulated a plan to have CI-2 purchase narcotics from the SIPLIN DTO at 230 Glenwood Avenue. At the direction of law enforcement, CI-2 traveled to the location while under surveillance and went to the rear of 230 Glenwood Avenue.  CI-2 went into the location and after a short time, SIPLIN was observed entering as well.  Shortly thereafter CI-2 left the location and returned to the undercover vehicle. CI-2 then provided investigators with the white, rock-like substance purchased from the SIPLIN DTO that day, which appeared to be crack cocaine. The substance later field tested positive for the presence of cocaine. During the debriefing CI-2 advised that he/she walked to the enclosed porch at the rear of 230 Glenwood Avenue, and was let inside.  After a short time SIPLIN entered the location. CI-2 had a brief conversation with SIPLIN about purchasing crack cocaine, and a price and quantity were agreed upon. CI-2 then handed SIPLIN an amount of U.S. currency and in exchange, SIPLIN handed CI-2 a quantity of white, rock-like substance that appeared to be crack cocaine.

## INTERCEPTED CALLS RELATING TO THE SIPLIN DTO

27.     As indicated above, throughout this investigation a number of eavesdropping warrants were issued by the Hon. Michael Dollinger, Monroe County Court Judge, for telephone numbers associated with the SIPLIN DTO. The following paragraphs are transcripts of intercepted calls or texts, or summaries thereof, supplemented by your affiant's interpretation of these communications. This affidavit does not present each and every call intercepted between parties, but merely provides relevant examples that are intended to demonstrate the involvement of each party.  Where pertinent, this affidavit also provides a

description of surveillance activity performed in connection with a particular communication. Throughout this investigation, surveillance has been conducted either "in person" by law enforcement agents on the ground or through video surveillance feeds from cameras located in public areas at or near relevant locations in Rochester, New York.

28.     **On October 29, 2020,** at approximately 10:50 p.m. an incoming call (Ref.# 671) was lawfully intercepted over target telephone number (585) 820-7677 utilized by GAMBLE. In this call, an unknown male asks GAMBLE if he is still there, to which GAMBLE replies yes. The male tells GAMBLE that he wants the same thing and asked him if he remembers what it was, to which GAMBLE replies, "yea you had 250 right." The unknown male says "no, 200." The unknown male goes on to say that he will be right there and for GAMBLE to "bag and get him ready." Based on my training and experience, the unknown male called GAMBLE and ordered a quantity of narcotics. Cocaine, cocaine base and other controlled substances are routinely packaged in glassine baggies.

29.     **On November 3, 2020**, at approximately 11:47 p.m. an incoming call (Ref.# 1133) was lawfully intercepted over target telephone number (585) 820-7677 used by GAMBLE, in which SIPLIN calls GAMBLE. During this call GAMBLE asks SIPLIN if he grabbed the "G" (based on my training and experience GAMBLE is referring to $1,000). SIPLIN says yes and then starts to ask if Ernest GAMBLE gave it right back to [a third party]. SIPLIN then asks GAMBLE if he bagged it up to which GAMBLE replies that he did. GAMBLE tells SIPLIN that "there was 15 here and my $800.00 and 40, and I had got two cards." Based on my training and experience, I believe SIPLIN and GAMBLE are discussing narcotics transactions and proceeds from narcotics transactions.

30.   **On November 7, 2020**, at approximately 3:03 p.m., an outgoing call (Ref.# 187) was lawfully intercepted during the execution of an eavesdropping warrant over telephone number (585) 355-1994 used by SIPLIN. In this call, SIPLIN asks what GAMBLE is doing. GAMBLE tells SIPLIN that he is bagging. SIPLIN comments on the fact that GAMBLE is still bagging and tells GAMBLE that he will be right there. Based on my training, experience and knowledge of this investigation, I believe GAMBLE is advising SIPLIN that he is in the process of packaging narcotics, most likely cocaine base.

31.   **On November 8, 2020,** at approximately 12:33 p.m., an incoming call (Ref.# 280) was lawfully intercepted over telephone number (585) 355-1994 used by SIPLIN, from (585) 260-4929 used by GRANISON. The contents of this call are transcribed below. It should be noted that New Cingular / AT&T records indicate that the services provided to cellular telephone number (585) 260-4929 are subscribed to in the name of Timothy Granison.

**JS:   Jason Siplin**
**TG:   Timothy Granison**

[Start]

JS:   What up cousin?

TG:   What up Uncle?

JS:   What's good wit you, where you at, you still at the house?

TG:   Nah I just pulled off where you at?

JS:   Oh, come on Glenwood right quick

TG:   Alright

[End]

32.   Based on my training, experience, and knowledge of this investigation, Timothy GRANISON called SIPLIN to arrange a meeting that took place at 230 Glenwood

Avenue.  At the time of this phone call, cellular location data placed SIPLIN's (585) 355-1994 phone in the area of 230 Glenwood Avenue, Rochester, New York. The investigation has revealed that the location is solely used to sell illegal narcotics, though it appears that members of the DTO may occasionally sleep at the house after the conclusion of their shift. Through covert camera surveillance and physical surveillance, members of the investigative team have observed customer foot traffic and vehicle traffic to this location at all hours of the day and night.  SIPLIN had previously stated during an intercepted call (Ref.# 4297) that it is not out of the ordinary for the drug house at 230 Glenwood Avenue to sell approximately two hundred and forty-eight grams of crack cocaine in one day.

33.  **On November 21, 2020**, at approximately 9:53 a.m. an incoming call (Ref.# 1983) was lawfully intercepted over telephone number (585) 820-7677 used by GAMBLE. During the call, an unknown male asks Gamble where SIPLIN is. GAMBLE tells the male that SIPLIN is in the house. The unknown male tells GAMBLE "This Mush I'm over here." GAMBLE tells Mush that SIPLIN probably wanted him to "bag that up." Based on my training, experience, and knowledge of the investigation, I believe "bag that up" refers to packaging a quantity of narcotics for distribution.  Mush then replied, in sum and substance, that that is what he thought too. "Mush" has been identified as Jason SIPLIN, JR.

34.  **On November 21, 2020**, at approximately 11:34 a.m., an outgoing call (Ref.# 1987) was lawfully intercepted over telephone number (585) 820-7677 utilized by GAMBLE. In this call, GAMBLE calls SIPLIN and says, "we need something, you want me to come get some." SIPLIN tells GAMBLE to meet him at the hotel. Based on my training, experience and knowledge of this investigation, I believe GAMBLE called SIPLIN to advise him that 230 Glenwood Avenue was either out of drugs, or low on drugs, and was asking SIPLIN if he

wanted GAMBLE to resupply the house. SIPLIN then tells GAMBLE to meet him at a hotel. The investigation has revealed that the SIPLIN DTO would utilize hotel rooms to prepare and package cocaine base to be sold out of 230 Glenwood Avenue.

35.     **On November 23, 2020**, at approximately 11:18 a.m., an outgoing call (Ref.# 3053) was lawfully intercepted over telephone number (585) 355-1994 used by SIPLIN to (585) 260-4929 used by GRANISON. The contents of this call are transcribed below:

**JS:     Jason Siplin**
**TG:    Timothy Granison**

[Start]

[Beginning of conversation is unintelligible]

JS:     Come by the house right quick [unintelligible]

TG:     Alright, yup. The house. Which house, your house?

JS:     On Glenwood right quick.

TG:     Alright.

JS:     I got to give you this [unintelligible]

TG:     Alright

[End]

36.     Based on my training, experience, and knowledge of this investigation, SIPLIN asks GRANISON to come to 230 Glenwood Avenue. SIPLIN then says something unintelligible about having to give GRANISON what sounds like "a coat" or "coke."  Based upon my training, experience, and knowledge of this investigation, it is very common for drug dealers to use code words over the phone, and I believe this exchange to be a reference to the illegal narcotics trafficking at 230 Glenwood Avenue.

37.   **On November 27, 2020**, at approximately 7:45 p.m., an incoming call (Ref.# 3929) was lawfully intercepted over telephone number (585) 355-1994 used by SIPLIN from (585) 260-4929 used by GRANISON, the contents of which are transcribed below:

**TG:   Timothy Granison**
**JS:   Jason Siplin**

[Start]

JS:   Cousin

TG:   Yo, where you at pimpin?

JS:   I'm on um Glenwood.

TG:   You want me to come there?

JS:   Yeah you can come [unintelligible] real quick

UM:   Alright.

[End]

38.   Based on my training, experience, and knowledge of this investigation, in this call GRANISON arranged another meeting with SIPLIN at the drug house located at 230 Glenwood Avenue.  At the time of this call SIPLIN's cellular location data associated with telephone number (585) 355-1994 places him in the area of 230 Glenwood Avenue.

39.   **On November 27, 2020,** at approximately 7:54 p.m., an incoming call (Ref.# 3936) was lawfully intercepted over telephone number (585) 355-1994 used by SIPLIN from (585) 260-4929 used by GRANISON, the contents of which are described below:

**TG:   Timothy Granison**
**JS:   Jason Siplin**

[Start]

JS:   Where the hell you at.

JS:     You outside cousin?

TG:     Yeah I'm out here

[End]

40.     Based on my training, experience, and knowledge of this investigation, GRANISON calls SIPLIN to let him know that he is outside of 230 Glenwood.  This call took place shortly after the previously described call (Ref.# 3929).  Just after this call (Ref.# 3936) is placed, surveillance footage from 230 Glenwood Avenue shows a large SUV pull into view on Rainier Street.  The SUV then stops on Rainier Street, which is the street on the west side of 230 Glenwood Avenue.  Within seconds, a male exits the rear door of 230 Glenwood Avenue and walks over to the SUV. The interior lights of the SUV briefly turn on while the male who exited 230 Glenwood Avenue stands at the driver's side door. Within 30 seconds, the male who exited 230 Glenwood Avenue walks away from the large SUV and goes back into 230 Glenwood Avenue from the rear door.  The large SUV then resumes driving down Rainier Street.  During this encounter, the individual who arrived in the large SUV never exits the vehicle. Due to the time of night, the quality of the surveillance video makes it difficult to clearly identify these individuals.  However, I believe that the male that exited 230 Glenwood Avenue and went up to the large SUV was Jason SIPLIN.  Timothy GRANISON is the registered owner of a Toyota Sequoia, which is a large SUV that has the same physical characteristics as the vehicle observed through the covert surveillance camera.  Moments before this large SUV pulled into the camera frame, GRANISON told SIPLIN that he had arrived at 230 Glenwood Avenue.  As such, I believe the individual in the large SUV was Timothy GRANISON.  Aside from the male believed to be SIPLIN, no one else is observed entering or exiting 230 Glenwood Avenue during this time frame. Based on my knowledge

of this investigation, and the brevity of this meeting, I believe that Timothy GRANISON went to 230 Glenwood Avenue to conduct a narcotics transaction with Jason SIPLIN.

41.    **On November 29, 2020**, at approximately 10:07 a.m., an incoming call (Ref.# 2586) was lawfully intercepted over telephone number (585) 820-7677 used by GAMBLE.  In this call SIPLIN asks GAMBLE who is at the house. GAMBLE tells him that 'Smooth" and "Rar" are at the location. GAMBLE then tells SIPLIN that something they had was "done." SIPLIN asks if they still have something there, to which GAMBLE replies yes, "hard." Crack cocaine or cocaine base is commonly referred to as "hard" in drug jargon. SIPLIN ends the call by telling GAMBLE that he is on his way.

42.    **On December 11, 2020**, at approximately 1:25 p.m., an outgoing call (Ref.# 1200) was lawfully intercepted over telephone number (585) 451-4342 used by SIPLIN to (585) 287-4361 used by Jason SIPLIN, JR., the contents of which are transcribed below:

**JS:    Jason SIPLIN**
**MU:    Jason SIPLIN JR. aka "Mush"**

[Start]

MU:    Yo.

JS:    Yo. Hey yo, somebody got my reg new money?

MU:    Umm, nah, I mean I can call. I can… I can get [unintelligible].  I'm on my way over there.  I just don't feel like rushin' and baggin' it up.

JS:    Um. I'm… I'm… I'll… I'll… I'll call her right now

[End]

43.    Based upon my training, experience, and knowledge of this investigation, in this call Jason SIPLIN is asking his son, Jason SIPLIN, JR., if his regular quantity of narcotics is packaged and ready to be distributed.  Jason SIPLIN, JR. informs Jason SIPLIN that that

he can make a call, but he does not feel like rushing over to the stash house to bag up the product. Jason SIPLIN then says, "I'll call her right now." I believe Jason SIPLIN is referring to Lytrice JACKSON a/k/a "Storm" when he mentions calling "her." The investigation has revealed that one of SIPLIN's workers by the name of Lytrice JACKSON will oversee day to day operations at 230 Glenwood Avenue on occasion.

44.     **On December 12, 2020**, at approximately 3:29 p.m., an outgoing call (Ref.# 1417) was lawfully intercepted over telephone number (585) 451-4342 used by SIPLIN, to (585) 287-4361 used by SIPLIN, JR., the contents of which are transcribed below:

**JS:     Jason SIPLIN**
**MU:    Jason SIPLIN JR. aka "Mush"**

[Start]

MU:    Yo.

JS:     Yo. Go to, um, Get Litty and grab the 34's.

MU:    Aight.

JS:     Alright.

[End]

45.     Based upon my training, experience, and knowledge of this investigation, in this call Jason SIPLIN is telling Jason SIPLIN, JR. to go to "Get Litty" and grab the "34's." I believe "Get Litty" refers to Get Litty Smoke Shop located at 515 Dewey Avenue in Rochester, New York, which sells various bags and supplies that are commonly then used by drug dealers to package narcotics. One bag size that Get Litty Smoke Shop carries is Apple Brand 3434 bags, which are 3/4" by 3/4" in size. I believe Jason SIPLIN was instructing Jason SIPLIN, JR. to purchase 3/4" sized bags from Get Litty Smoke Shop, which the SIPLIN DTO will then use to package narcotics for street sale.

46.     **On December 17, 2020**, at approximately 12:25 p.m., an outgoing call (Ref.# 2312) was lawfully intercepted over telephone number (585) 451-4342 used by Jason SIPLIN to telephone number (585) 287-4361 used by Jason SIPLIN JR., transcribed below:

**JS:     Jason SIPLIN**
**MU:    Jason SIPLIN JR. aka "Mush"**

[Start]

MU:    Yo.

JS:     Yo. Did you get the bags?

MU:    Nah, nigga. I thought you was comin' back?

JS:     I know. I was but, you know, I'm runnin' around. I'm about to get them now, son. I mean you gotta… you gotta be there, bro. As a matter of fact, I got… I got… I gotta take this jewelry to the mall right quick.

MU:    Alright. I'm about to go get them then.

JS:     Go get 'em, brah.

MU:    Alright.

[End]

47.     Based upon my training, experience, and knowledge of this investigation, I believe that in this call, Jason SIPLIN and Jason SIPLIN, JR. are discussing the need to procure bags to package narcotics for distribution purposes.

48.     **On December 19, 2020**, at approximately 8:33 a.m., an incoming call (Ref.# 4592) was lawfully intercepted over telephone number (585) 820-7677 used by GAMBLE, from SIPLIN.  In this call, SIPLIN asks GAMBLE "what's it look like." GAMBLE tells SIPLIN that the first G-pack is almost gone but that they have another one. Based on my training, experience and knowledge of this investigation, I believe that GAMBLE and SIPLIN are discussing the available drugs at 230 Glenwood Avenue. GAMBLE tells SIPLIN that the first

26

"G pack" is almost gone, but they have another one. I believe GAMBLE is referring to a package containing $1,000.00 worth of cocaine base when uses the phrase "G-pack."

49.   **On December 23, 2020**, at approximately 3:25 p.m., an outgoing call (Ref.# 4543) was lawfully intercepted over telephone number (585) 451-4342 used by Jason SIPLIN to telephone number (585) 287-4361 used by Jason SIPLIN, JR., transcribed below:

**JS:   Jason SIPLIN**
**MU:   Jason SIPLIN JR. aka "Mush"**

[Start]

MU:   Yo.

JS:   Mush. Where you got them bags? Get Litty got some?

MU:   What? The 58's… 58's? Yeah.

JS:   Nah. The 34's… the 34's… the 34's.

MU:   They don't… um… they don't got no more slims.

JS:   Oh, they don't?

MU:   Nah.

JS:   Them was 58's you had?

MU:   Yeah, the uh, yeah. 38's. 34's first then I have 58's.

JS:   Alright. I'll get some. Alright.

[End]

50.   Based upon my training, experience, and knowledge of this investigation, I believe Jason SIPLIN and Jason SIPLIN, JR. are discussing the drug packaging baggies they have at their disposal. When Jason SIPLIN, JR. tells Jason SIPLIN, "They don't got no more slims," I believe that he means that they do not have any more 3/4" bags left.  Another bag size that Get Litty Smoke Shop carries is Apple Brand 5858 bags, which are 5/8" by 5/8" in

size. I believe Jason SIPLIN is referring to these bags when he references "58's" in this conversation.

51. **On December 23, 2020,** at approximately 3:26 p.m., an incoming call (Ref.# 4545) was lawfully intercepted over telephone number (585) 451-4342 used by SIPLIN from (585) 260-4929 used by GRANISON, the contents of which are transcribed below:

**JS:    Jason Siplin**
**TG:    Timothy Granison**

[Start]

JS:    Hello

TG:    Cousin

JS:    What up cousin

TG:    You busy?

JS:    Na I aint busy

TG:    I need a huge favour til tomorrow

JS:    What's up

TG:    Can you loan me 400 til tomorrow

JS:    Yea I got you, I'm about to go home

TG:    Alright I'll be there

JS:    Alright

[End]

52. A related call was intercepted approximately 20 minutes later. **On December 23, 2020,** at approximately 3:45 p.m., an incoming call (Ref.# 4561) was lawfully intercepted over telephone number (585) 451-4342 used by SIPLIN from (585) 260-4929 used by GRANISON, transcribed below:

**JS:   Jason Siplin**
**TG:   Timothy Granison**

[Start]

JS:   Yo

TG:   What up cousin

JS:   Yo um, when, um, come to Comfort Inn on West Ridge Road, grab me a black and mild too.

TG:   Come to where?

JS:   Right next to Red Lobster

TG:   Oh, oh alright, alright

[End]

53.    Based on my training, experience, and knowledge of this investigation, GRANISON called SIPLIN regarding a meeting at the Comfort Inn by the Red Lobster on West Ridge Road.  Throughout this investigation, surveillance, intercepted phone calls, and interviews of targets have established that the SIPLIN DTO used hotel rooms to break down, package, and prepare his cocaine base for street sale. One minute prior to the first phone call with GRANISON on this date (Ref.# 4545), SIPLIN called his son Jason SIPLIN, JR. (Ref.# 4543), to discuss the what baggies they have available to package narcotics.  Based upon this series of conversations, I believe SIPLIN went to the Comfort Inn this afternoon to prepare and package a quantity of cocaine base for street sale.

54.    **On December 23, 2020**, at approximately 3:54 p.m., an outgoing call (Ref.# 4564) was lawfully intercepted over telephone number (585) 451-4342 used by SIPLIN to (585) 260-4929 used by GRANISON, transcribed below:

**JS:    Jason Siplin**
**TG:    Timothy Granison**

[Start]

TG:    I'm right here this traffic

JS:    I know the traffic crazy, alright

TG:    I'm about to get, you said a black and mild

JS:    Yep

TG:    One or two

JS:    Just one, just one

TG:    Alright

[End]

      55.    Based on my training, experience, and knowledge of this investigation, Jason SIPLIN called Timothy GRANISON to check on his status. GRANISON complains that he is stuck in traffic but is still on his way to the hotel.

      56.    **On December 23, 2020,** at approximately 4:02 p.m., an incoming call (Ref.# 4566) was lawfully intercepted over telephone number (585) 451-4342 used by SIPLIN from (585) 260-4929 used by GRANISON, transcribed below:

**JS:    Jason Siplin**
**TG:    Timothy Granison**

[Start]

JS:    Here Cousin

TG:    I'm out here in the back

JS:    Come up, 209, come quiet.

TG:    Alright, alright

JS:     Alright

[End]

57.     Based on my training, experience, and knowledge of this investigation, GRANISON calls Jason SIPLIN to tell him that he has arrived at the hotel.  SIPLIN directs GRANISON to come to room 209.  Based on SIPLIN's previous conversation with Jason SIPLIN, JR. inquiring about packaging materials (Ref. # 4543), I believe that SIPLIN is at the hotel packaging cocaine base for street sale when GRANISON arrives.

58.     **On January 7, 2021**, at approximately 1:39 p.m., an outgoing call (Ref.# 1542) was lawfully intercepted pursuant to an eavesdropping warrant for target telephone number (585) 287-4361 used by Jason SIPLIN, JR., to telephone number (585) 284-3775 used by SIPLIN, transcribed below:

**JS:     Jason SIPLIN**
**MU:    Jason SIPLIN JR. a/k/a "Mush"**

[Start]

MU:    Yo.

JS:     What up, Mush?

MU:    Ain't nothin'  I… I… I had called, uh, Heem. He said they was good like a hour ago.

JS:     You called who?

MU:    Heem. Raheem. Raheem.

JS:     Oh, yea, uh… uh huh.

MU:    Yeah, I'm… I'm… I'm done with that.

JS:     [yelling at someone in the background] Yo, nigga! Go downstairs and smoke that shit! I do not want my house smelling like that! Please, bro, I'm just sayin'! Hello?

MU:    Yeah yeah yeah, I'm gonna come by and bring that bread.

31

JS:     Yeah, I know. You finished that though, right?

MU:     Yeah yeah yeah.

JS:     Alright, I'll hit you.

MU:     Alright.

[End]

59.     Based upon my training, experience, and knowledge of this investigation, I believe Jason SIPLIN, JR. is telling Jason SIPLIN that the house at 230 Glenwood Avenue has enough product for the time being.  I believe this because the individual they refer to as "Heem" is an individual with initials R.G. that is known to work for Jason SIPLIN at 230 Glenwood Avenue selling crack cocaine.  When Jason SIPLIN, JR. tells Jason SIPLIN that he's going to "come by and bring that bread" I believe Jason SIPLIN, JR. means that he will be dropping off money to Jason SIPLIN.  The term "bread" is commonly used by drug dealers and others as a term for money.

60.     **On January 8, 2021**, at approximately 12:59 p.m., an outgoing call (Ref.# 1627) was lawfully intercepted pursuant to an eavesdropping warrant for telephone number (585) 287-4361 used by Jason SIPLIN, JR. to telephone number (585) 284-3775 used by Jason SIPLIN,  transcribed below:

**JS:     Jason SIPLIN**
**MU:     Jason SIPLIN JR. a/k/a "Mush"**

[Start]

MU:     Yo.

JS:     What up, Mush?

MU:     Nah, I was calling to see, uh, when I had talked to Heem, he had said that it was, uh, a…a… a pack left.

JS:     Huh?

MU:     I said I had called Heem to make sure there was a pack left. I was gonna…

JS:     Oh, word. Just bring it over there.

MU:     Alright.

JS:     Alright.

[End]

61.     Based upon my training, experience, and knowledge of this investigation, I believe that Jason SIPLIN, JR. is discussing the quantity of narcotics remaining at 230 Glenwood Avenue with Jason SIPLIN.

62.     **On March 4, 2021** at approximately 9:58 a.m. an incoming call (Ref.# 146) was lawfully intercepted over telephone number (585) 867-3073 used by SIPLIN from telephone number (585) 285-3463 used by JACKSON.  In this call JACKSON tells SIPLIN "I'm done." At the time of this call SIPLIN is in the area of 62 Clifton Street.  At approximately 10:10 a.m. he is observed via surveillance to be in the area of 230 Glenwood Avenue.

63.     Based on my training, experience, and knowledge of this investigation, as well as my conversations with the investigative team, I believe that JACKSON called SIPLIN to let him know that she was "done" with her shift selling drugs out of 230 Glenwood Avenue. Soon after, surveillance officers observed that SIPLIN traveled to 230 Glenwood Avenue from 62 Clifton Street. The investigation has revealed that JACKSON will occasionally sleep upstairs at 230 Glenwood Avenue at the conclusion of her shift.

64.     **On March 4, 2021** at approximately 7:25 p.m. an incoming call (Ref.# 204) was lawfully intercepted over target telephone number (585) 867-3073 used by SIPLIN from

telephone number (585) 285-3463 used by JACKSON.  In this call JACKSON tells SIPLIN "we out" and "we need you."  SIPLIN replies "alright."

65.     Based on my training, experience and knowledge of this investigation, I believe JACKSON is telling SIPLIN that 230 Glenwood Avenue is out of drugs to sell and that she needs SIPLIN to resupply the house.

66.     **On March 7, 2021** at approximately 11:40 a.m. an outgoing call (Ref.# 265) was lawfully intercepted over telephone number (585) 285-3463 used by Lytrice JACKSON to target number (585) 867-3073 used by SIPLIN. In this call JACKSON tells SIPLIN that there is a line forming "out here" and that "they coming."  SIPLIN says he will "call them." After this call (at approximately 11:40 a.m.) surveillance officers observed a white Ford Taurus (NY registration JJW3772) leaving 62 Clifton Street.  At approximately 11:46 a.m. the same Ford Taurus pulls up to 230 Glenwood Avenue. A black female is observed getting out of the passenger seat and motions to the customers waiting outside of the house as she goes into the rear door of 230 Glenwood Avenue.

67.     Based on my training, experience, and knowledge of this investigation, I believe that JACKSON called SIPLIN because 230 Glenwood Avenue was out of drugs to sell and a line was forming outside of the location. I believe that shortly after this call with JACKSON, SIPLIN sent the white Taurus from 62 Clifton Street to resupply 230 Glenwood Avenue with drugs.

68.     **On March 8, 2021**, at approximately 6:33 p.m. an incoming call (Ref.# 450) was lawfully intercepted over telephone number (585) 867-3073 used by SIPLIN from (585) 260-4929 used by GRANISON. The contents of the call are transcribed below:

**JS:**   **Jason Siplin**
**TG:**   **Timothy Granison**

[Start]

JS:   Yo

TG:   Wild line cousin

JS:   Whhaaawaa

[End]

69.   In this call GRANISON calls SIPLIN and says, "wild line, cousin." Jason SIPLIN responds briefly, and the call disconnects. The duration of this call was 14 seconds in its entirety. Following this phone call, GRANISON was observed arriving at 62 Clifton Street at 6:51 p.m. in a large SUV, and then entering the location. N.B., another drug trafficking associate of the SIPLIN DTO, arrived at 62 Clifton Street at 7:07 p.m. and entered the location. Shortly thereafter Jason SIPLIN arrived at 62 Clifton Street and entered the location at 7:16 p.m., after parking his vehicle on the street. Based on my training, experience, and knowledge of this investigation, I believe 62 Clifton Street is the stash house where SIPLIN stores bulk quantities of narcotics. 60/62 Clifton Street is a multi-family dwelling located in the City of Rochester. 62 Clifton Street is located in the rear of this multi-family dwelling and is accessed through the northern-most porch on the east side of the dwelling. Jason SIPLIN, Jason SIPLIN, JR., GRANISON, N.B., and several others have been observed accessing this location over the course of the investigation, but no customer foot traffic has been observed here. On several occasions, calls have been intercepted to or from one of SIPLIN's phones indicating that 230 Glenwood Avenue is running low on narcotics, at which time SIPLIN or SIPLIN, JR. have then made a brief stop inside 62 Clifton Street before travelling directly to 230 Glenwood Avenue, to resupply the location.

70.     On this date, four minutes after Jason SIPLIN arrived at 62 Clifton Street, Timothy GRANISON was observed leaving the location in a large SUV, identified through camera surveillance as a Toyota Sequoia.  Plain clothes officers observed the license plate for this vehicle to read GYB 1199.  Records for GYB 1199 indicate that the Toyota Sequoia is registered to Timothy GRANISON of 93 Woodman Park, Rochester, New York. GYB 1199's registration records show this registration has subsequently been replaced by KKV 6346.  A surveillance team followed GRANISON from 62 Clifton Street.  GRANISON made two short stops at convenience stores, and then traveled back to 93 Woodman Park.  Based on my training, experience, and knowledge of this investigation, I believe "wild line" is a code word used to meet at SIPLIN's stash house at 62 Clifton Street.  N.B. was observed leaving 62 Clifton Street at 7:55 p.m. and returning at 8:17 p.m. At 8:30 p.m., N.B. left the location once again.

71.     **On March 9, 2021**, at approximately 6:01 p.m., an outgoing call (Ref.# 492) was lawfully intercepted over telephone number (585) 867-3073 used by SIPLIN to (585) 690-6209 used by an associate of the SIPLIN DTO with the initials J.S. The contents of this call are transcribed below:

**JS:     Jason Siplin**
**UM:   J.S.**

[Start]

UM:   Yo.

JS:     Um, you still at the house?

UM:   Yea, I'm still at the house right now, I'm about to leave though.

JS:     Ah, what time you leaving?

UM:   About to leave in a minute.

JS:    Oh umm, Tim brung you my sneakers?

UM:    Yea.

JS:    Oh. Alright, how long you about to leave cause I'm about to have ca, Cam come get um.

UM:    Uh, how long you think that's going to be.

JS:    I don't know, how, you about to leave now?

UM:    Yea I planned on it.

JS:    Oh. Alright. Who there?

UM:    Angel.

JS:    Alright, where you put it at?

UM:    In the house in my bag.

JS:    Which one?

UM:    My Nike one.

JS:    Oh, where's that.

UM:    In my studio.

JS:    Alright.

[End]

72.    In this call SIPLIN asks J.S. if Tim (meaning GRANISON) dropped off his "sneakers," which J.S. confirms. J.S. is one of SIPLIN's children and resides with SIPLIN at 14 Elwood Drive. Based on the contents of this call and surveillance operations, I believe 14 Elwood Drive is the location being discussed throughout this call. SIPLIN tells J.S. that he wants to send someone by the house to get "them," but J.S. tells SIPLIN that he is planning on leaving soon. SIPLIN then asks if anyone else was at the house.  When J.S. tells SIPLIN

that an individual named "Angel" was in the house, SIPLIN asks "where did you put it" no longer referring to the delivery as "sneakers." J.S. tells SIPLIN that he put the delivery in his Nike bag, which is in his studio. During SIPLIN's conversation with J.S. he appeared to be concerned about leaving the delivery unattended while "Angel" was at 14 Elwood Drive alone. Based on my training and experience, it is common for drug dealers to use code words to describe narcotics or other illegal activities in an effort to evade prosecution. I believe that when SIPLIN asks J.S. where he put "it" SIPLIN is referring to a quantity of narcotics or drug proceeds, and not a pair of sneakers.

73.     Prior to the above described call between SIPLIN and J.S., surveillance officers observed Timothy GRANISON arrive at 14 Elwood Drive at approximately 5:03 p.m. GRANISON exited his vehicle without anything in his hands and entered 14 Elwood Drive. Based on my training and experience, it is common for narcotics traffickers to carry and conceal narcotics or U.S. currency on their person. Twenty minutes after the above described call, at approximately 6:22 p.m., Timothy GRANISON's vehicle was observed as it returned to 14 Elwood Drive and pulled into the driveway. Four minutes later, GRANISON's vehicle was observed leaving the location. Based on my training, experience, and knowledge of this investigation, I believe Timothy GRANISON returned to 14 Elwood Drive to retrieve the narcotics or U.S. currency he had dropped off earlier, due to SIPLIN's concern about leaving the delivery alone with "Angel."

74.     **On March 15, 2021,** at approximately 4:50 p.m., an outgoing call (Ref.# 1153) was lawfully intercepted over telephone number (585) 867-3073 used by SIPLIN to (585) 260-4929 used by GRANISON, the contents of which are transcribed below:

**JS:     Jason Siplin**
**TG:     Tim Granison**

[Start]

TG:     Hello?

JS:     You went back to the house?

TG:     Nah, I'm in Greece. I'm taking her to the Mall to get her hair done.

JS:     Oh, she about to get her hair done?

TG:     Yeah, you at home?

JS:     Nah, I ain't at home. Just hit me.

TG:     Alright

[End]

75.     **On March 15, 2021**, at approximately 5:30 p.m., an outgoing call (Ref.# 1159) was lawfully intercepted over telephone number (585) 867-3073 used by SIPLIN to (585) 260-4929 used by GRANISON, transcribed below:

**JS:     Jason Siplin**
**TG:     Tim Granison**

[Start]

TG:     Cousin… Hello? Hello?

JS:     Are you still out there?

TG:     Hell yeah. She ain't done yet.

JS:     Oh, Oh you at Greece Mall?

TG:     Yeah

JS:     Oh, I'm bout to um, buy my thing out there. I'm bout to come out there right quick to you anyways so I can give you the [inaudible]. Damn.

TG:     Alright, I'm, I'm on the, I'm on the Long Pond side.

JS:    Alright

TG:    Alright

JS:    [apparently talking to someone in the background] Which one you want to take?

[End]

76.    Twenty minutes later, **on March 15, 2021**, at approximately 5:52 p.m., an outgoing call (Ref.# 1164) was lawfully intercepted over telephone number (585) 867-3073 used by SIPLIN to (585) 260-4929 used by GRANISON. The contents of this call are transcribed below:

**JS:    Jason Siplin**
**TG:    Timothy Granison**

[Start]

TG:    Yo

JS:    Uh, what part you at cousin?

TG:    I'm right on the part of Long Pond by Macy's. I'm sitting out, way out in the parking
       lot. You'll see me.

JS:    Alright, Macy's, alright.

TG:    Where you at?

JS:    I'm bout to pull up near Macy's

TG:    Alright

JS:    Yeah

[End]

77.    Surveillance was conducted in connection with the three calls described above that took place on March 15, 2021, between 4:50 p.m. and 5:52 p.m. (Ref.#s 1153, 1159 and 1164). In sum and substance, GRANISON and SIPLIN make arrangements to meet up at the Greece Ridge Mall.  At 5:52 p.m., SIPLIN calls GRANISON to try to figure out where

exactly GRANISON is at the mall. GRANISON tells SIPLIN that he is by Macy's "way out in the parking lot." SIPLIN was then observed by plain clothes officers pulling up to GRANISON's vehicle in his new Mercedes.  At 5:53 p.m., SIPLIN was observed getting into GRANISON's vehicle.  At 5:56 p.m., SIPLIN exited GRANISON's vehicle, returned to his Mercedes, and proceeded to drive away. At 6:00 p.m., GRANISON drove away from his parking spot in the Macy's parking lot onto West Ridge Road, and then reentered the Mall parking lot on the other side by the Target entrance.  At 6:30 p.m., GRANISON returned to the Macy's parking lot.  At no point did GRANISON exit his vehicle.  Based on my training, experience, and knowledge of this investigation, I believe that SIPLIN met up with GRANISON to exchange narcotics, U.S. currency related to narcotics trafficking, or both. SIPLIN and GRANISON met in a remote area of the parking lot near Macy's for approximately three minutes.  I believe that GRANISON then moved his vehicle between parking lots in an effort to reveal law enforcement surveillance or to discreetly assess what SIPLIN had just brought him.  It is a common practice for drug dealers to "clean themselves off" after a drug transaction by driving around a block or by making several right hand or left hand turns in a row. These evasive tactics are used to reveal or evade police surveillance. Cellular location data places SIPLIN's phone in the area of 14 Elwood Drive during the second call that he makes to GRANISON (Ref.# 1159) prior to their meeting at the mall. From Elwood Drive, SIPLIN's cellular location data then places him in the area of Greece Ridge Mall, where he is observed by plain clothes officers.

78.   **On March 31, 2021**, at approximately 8:48 p.m. an outgoing text message (Ref.# 780) was lawfully intercepted over telephone number (585) 260-4929 used by GRANISON to (585) 360-6846, later learned to be used by Dkeidron DUBLIN.

**TG:   Timothy Granison**
**DD:   Dkeidron Dublin**

[Start]

TG:   Uber is in route

[End]

79.    Based on my training, experience, and knowledge of this investigation, GRANISON sent Dkeidron DUBLIN the text message "Uber is in route" to let DUBLIN know that GRANISON would be arriving shortly with a delivery of narcotics.  Drug dealers will frequently use coded, cryptic and guarded jargon to discuss narcotics transactions and to arrange meetings. At 8:50 p.m., GRANISON received an incoming text message (Ref.# 782) from (585) 360-6846 used by DUBLIN that simply read "ok." On March 31, 2021 at approximately 8:56 p.m., a surveillance team observed GRANISON's Toyota Sequoia pulling into the driveway of 5 Birch Crescent. At 8:58 p.m., an incoming text message (Ref.# 787) to GRANISON from DUBLIN at (585) 360-6846 read "pulling up." Shortly thereafter, a short black male was observed entering the passenger side of GRANISON's Toyota Sequoia. At approximately 9:10 p.m. members of the surveillance team observed this same person exiting the passenger side of GRANISON's vehicle and then entering 5 Birch Crescent.  Based on the positioning of the surveillance units it is unclear if the individual came from the house or some other location prior to entering GRANISON's vehicle. The Toyota Sequoia then drove away from 5 Birch Crescent. Over the course of the investigation your affiant has learned that Dkeidron DUBLIN resides at 5 Birch Crescent.  DUBLIN is a black male that is 5'2" and approximately 110 pounds. Based on the foregoing text messages and surveillance observations, I believe GRANISON met with DUBLIN at 5 Birch Crescent in order to provide him with a quantity of narcotics.

80.   **On April 1, 2021,** at approximately 1:10 p.m. an incoming call (Ref.# 826) was lawfully intercepted over telephone number (585) 867-3073 used by SIPLIN to telephone number (585) 260-4929 used by GRANISON. The contents of this call are transcribed below:

**TG:   Timothy Granison**
**JS:   Jason Siplin**

[Start]

TG:   Hello

JS:   Damn

TG:   Hello

JS:   Yo what's up brother where's my room at man

TG:   Man where you at man

JS:   On that pussy boy, where you at, fuck

TG:   I'm, I'm on Main Street bout to

JS:   Oh word

TG:   Yea

JS:   Oh, what you doing over there? I'm right here on Jefferson, I'm near the umm, right over here.

TG:   Alright

JS:   Alright

[End]

81.   Based on my training, experience, and knowledge of this investigation, this brief conversation indicates an already planned meeting. Over the course of this investigation, SIPLIN and GRANISON have kept telephone conversations brief, instead repeatedly

arranging for face to face meetings. I believe they avoid speaking over the phone due to concern over the possibility that their conversations will be intercepted by law enforcement.

82.    **On April 1, 2021**, at approximately 1:26 p.m. an outgoing call (Ref.# 827) was intercepted over telephone number (585) 260-4929 used by GRANISON to (585) 867-3073 used by SIPLIN.

**TG:    Timothy Granison**
**JS:    Jason Siplin**

[Start]

JS:    I'm, Cousin, I'm in um at in the fish market at the um um beauty salon, hairdo store

TG:    Oh

JS:    Come over here

TG:    Alright

JS:    mm

[End]

83.    Based on my training, experience, and knowledge of this investigation, SIPLIN called GRANISON to meet him at the fish market and beauty salon located at 626 West Main Street in Rochester, New York. Shortly after this call, a surveillance team observed SIPLIN and GRANISON park next to each other in the rear parking lot of this location. The surveillance team further observed SIPLIN enter the passenger side door of GRANISON's vehicle. After approximately five minutes, SIPLIN returned to his vehicle, and both parties drove away in opposite directions.  The surveillance team was unable to follow GRANISON due to his erratic driving. Based on my training and experience, I believe SIPLIN and GRANISON met up in order to conduct a narcotics transaction. I also believe that the erratic

driving patten engaged in by GRANISON was designed to either reveal or evade law enforcement surveillance.

84.    **On April 5, 2021,** at approximately 3:55 p.m. an incoming call (Ref.# 1225) from (585) 360-6846 used by DUBLIN to (585) 260-4929 used by GRANISON was lawfully intercepted pursuant to an eavesdropping warrant, the contents of which are transcribed below:

**DD:    Dkeidron Dublin**
**TG:    Timothy Granison**

[Start]

TG:    Hello

DD:    You make it hard out here for a pimp don't you

TG:    Nah, my bad

DD:    God damn

TG:    You know, so my number be the same for twenty years you know

DD:    You absolutely right but damn

TG:    Hey my bad, it's like that man

DD:    Nah, if I aint just think about it I probably wouldn't of called now

TG:    Nah it wasn't that I was just waiting on you, I was going to kill two birds with one stone, ha ha

DD:    What's up? Everything alright or?

TG:    Yeah, yeah, yeah yeah, yup sure enough, you um, you want me to slide by it

DD:    Nah, just put it with my next order that's all

TG:    Alright

DD:    I'll probably call you before the night over

45

TG:   Oh word

DD:   What you need more time?

TG:   Nah, nah, nah, nah, nah, tonight, the morning it don't matter

DD:   Yeah, I'll probably hit you before it gets too late

TG:   Alright yeah cuz I gotta be to work at 2:30 tonight, he he he he he

DD:   oh shoot, yeah so, I'll try and hit you before it gets too late

TG:   Alright

DD:   Alright

TG:   Peace

[End]

85.     In this call GRANISON and DUBLIN speak about possibly meeting up. At one-point DUBLIN tells GRANISON to "just put it with my next order." DUBLIN tells GRANISON that he will probably call him before the night is over. DUBLIN asks GRANISON if he needs more time. Based on my training, experience, and knowledge of this investigation, GRANISON and DUBLIN are discussing a future narcotics transaction. GRANISON is not known to sell legitimate, legal products.  DUBLIN asks GRANISON if he needs more time to complete the order.  I believe this to mean that DUBLIN is questioning whether or not GRANISON has enough product on hand, or if he needs more time to acquire the narcotics that DUBLIN is seeking. GRANISON indicates that he is ready.

86.     **On April 5, 2021** at approximately 6:40 p.m. an incoming call (Ref.# 1245) from (585) 360-6846 used by DUBLIN, to target telephone number (585) 260-4929 used by GRANISON was intercepted pursuant to a lawful eavesdropping warrant. The contents of this call are transcribed below:

**TG:    Timothy Granison**
**DD:    Dkeidron Dublin**

[Start]

TG:    Hello

DD:    Yea yo

TG:    Yo

DD:    I will a

TG:    Alright

DD:    I need two of them

TG:    Alright

[End]

87.    Based on my training, experience, and knowledge of this investigation, Timothy GRANISON and DUBLIN are discussing a narcotics transaction. DUBLIN tells GRANISON "I need two of them" which I believe is a coded request for twice the amount of narcotics he typically buys from GRANISON. Cocaine is frequently sold in standardized amounts such as "31s" meaning approximately 31 grams of cocaine, or "62s" meaning approximately 62 grams of cocaine, among other amounts. At approximately 7:16 p.m. on this date, a surveillance team observed GRANISON operating his Toyota Sequoia and pulling into the driveway of 5 Birch Crescent.  A few seconds later, GRANISON moved his vehicle to allow a small SUV bearing New York registration GBL2378, with an unknown female driver, to pull in.  At approximately 7:16 p.m., the surveillance team observed a male with a very small build exit 5 Birch Crescent and enter the front seat of GRANISON's vehicle. At approximately 7:19 p.m., the surveillance team observed GRANISON drive around the block with the unknown male.  GRANISON drove from Birch Crescent, to Main Street, to

Circle Street, to Goodman Street, and back to 5 Birch Crescent.  The unknown male then exited the front seat of Timothy GRANISON's Toyota Sequoia, removed an infant out of the backseat of the small SUV bearing NY GBL2378, and then walked into 5 Birch Crescent. Thereafter GRANISON left the location, traveling east bound on Main Street. At 8:14 p.m. the surveillance team observed Timothy GRANISON's Toyota Sequoia parked at 93 Woodman Park. Based on my training, experience, and knowledge of this investigation I believe GRANISON conducted a narcotics transaction with DUBLIN when he arrived at 5 Birch Crescent on this date. DUBLIN's physical appearance is consistent with the male seen meeting with GRANISON outside of 5 Birch Crescent, and DUBLIN is known to reside at this location.

88.    **On April 14, 2021**, at approximately 4:32 p.m., an outgoing call (Ref.# 5) from (585) 857-8489 used by SIPLIN to telephone number (585) 867-1292 used by Jason SIPLIN, JR., was lawfully intercepted pursuant to an eavesdropping warrant. The contents of the call are transcribed below:

**JS:    Jason SIPLIN**
**MU:   Jason SIPLIN JR. aka "Mush"**

[Start]

MU:   Yo.

JS:    What's up, Mush?

MU:   Nothin', umm, so you, do you want me to go up there and… [unintelligible]

JS:    What? Y'all gonna need it?

MU:   Yeah.

JS:    Man. Aight. What time is it? Just, um, just go over there with the scale and shit and, umm…

MU:   Yeah. That's what I'm gonna do. But, um, also, uh, I went to Home Depot a couple of times with Max. I didn't know if you wanted… I wanted to tell you how much. (unintelligible)… or whatever.  Imma go over there. Imma hit 'em.

JS:   Yeah just, um, just weigh out 4… all 4 should be 60 and we'll figure out the rest for now.

MU:   Ok.

JS:   Aight.

MU:   Aight.

[End]

89.     Based upon my training, experience, and knowledge of this investigation, I believe Jason SIPLIN is telling Jason SIPLIN, JR. to take a scale and then measure out four (4) "62's" of cocaine. A "62" in drug jargon is a commonly used term to describe approximately 62 grams of cocaine. The investigative team has learned over the course of this investigation that Jason SIPLIN is known to shortchange customers, so when he says that "all 4 should be 60," I believe he is instructing Jason SIPLIN, JR. to fill each "62" bag with only 60 grams of cocaine. For context, a $10 bag of cocaine base that would be sold to an individual drug user would typically contain approximately 0.1 grams of cocaine.

90.     In connection with this call (Ref.# 5) intercepted on **April 14, 2021**, involving Jason SIPLIN and Jason SIPLIN, JR., members of the investigative team conducted surveillance on 62 Clifton Street. At approximately 4:52 p.m. a black Chevrolet Equinox matching the description of a vehicle driven by Jason SIPLIN, JR. pulled into the driveway of 62 Clifton Street.  A male that fits the physical description of Jason SIPLIN, JR. was then observed exiting the front driver's side of this vehicle and entering the residence at 62 Clifton Street. This took place approximately 20 minutes after Jason SIPLIN instructed Jason SIPLIN, JR. to go "weigh out 4."  I believe Jason SIPLIN, JR. went to 62 Clifton Street to

weigh out four (4) "62s" of cocaine in response to SIPLIN's instructions.

91.   **On April 14, 2021**, at approximately 9:44 p.m., an outgoing call (Ref.# 1009) from telephone number (585) 867-7445 used by Jason SIPLIN, JR. to Get Litty Smoke Shop at telephone number (585) 766-5985 was lawfully intercepted pursuant to an eavesdropping warrant.  The contents of the call are described below:

**MU:   Jason SIPLIN, JR. a/k/a "Mush"**
**GL:   Get Litty Smoke Shop**

[Start]

GL:   Get Litty Smoke Shop.

MU:   Yo, do y'all sell beakers?

GL:   Yeah.

MU:   Do y'all… do y'all got the, uh, 1,800 or the 2,000?

GL:   The biggest size we got is 1,000.

MU:   1,000? Aight.

[End]

92.   Based upon my training, experience, and knowledge of this investigation, I believe Jason SIPLIN, JR. was calling "Get Litty Smoke Shop" looking for beakers. Beakers are commonly used by crack cocaine dealers to transform powder cocaine into cocaine base.

93.   **On April 14, 2021**, at approximately 9:44 p.m. an outgoing call (Ref.# 1010) over telephone number (585) 867-7445 used by Jason SIPLIN, JR., to telephone number (585) 635-2039 used by an individual known to have the initials F.R. was lawfully intercepted pursuant to an eavesdropping warrant.  The contents of this call are transcribed below:

**MU:** **Jason SIPLIN JR. a/k/a "Mush"**
**FR:** **Associate of the SIPLIN DTO with initials F.R.**

[Start]

FR:   Yo.

MU:   Yo, umm, you can do it in a 1,000 one?

FR:   I'm all done, bro. I did it. I found mine, yeah.

MU:   [laughs] Aight. Whatchu gonna come get it? Or you gonna drop it off to me?

FR:   Where you at, bro?

MU:   Shit. I'm still… I'm still… I was just about to leave Glen.

FR:   Where you going?

MU:   The crib.

FR:   Yeah, it doesn't matter. Call me when you get there. I'm not even 2 minutes away.

MU:   Aight.

FR:   Aight.

[End]

94.     Based upon my training, experience, and knowledge of this investigation, I believe Jason SIPLIN, JR. was asking F.R. if he would be able to cook crack cocaine using a 1,000-milliliter beaker.  This coincides with an earlier call by Jason SIPLIN, JR. to "Get Litty Smoke Shop" (Ref.# 1009) when Jason SIPLIN, JR. inquired about the sizes of glass beakers the shop had in stock.  In this call (Ref.# 1010) F.R. tells Jason SIPLIN, JR. that he no longer needs one as he had found his own glass beaker. Jason SIPLIN, JR. tells F.R. that he is about to leave "Glen."  I believe "Glen" is short for 230 Glenwood Avenue, Jason SIPLIN's main

crack cocaine distribution location.

95.     **On April 24, 2021,** at approximately 5:21 p.m., an incoming text message (Ref.# 2902) was lawfully intercepted over telephone number (585) 260-4929 used by GRANISON to telephone number (585) 360-6846 used by DUBLIN. In this text message, GRANISON asks DUBLIN "Did you want an Uber today or tomorrow?" During a follow up text message (Ref.# 2904) moments later, DUBLIN tells GRANISON "Tomorrow to be safe." Based on my training, experience, and knowledge of this investigation, GRANISON asked DUBLIN if he needs to be resupplied with narcotics. DUBLIN told GRANISON "Tomorrow to be safe."

96.     **On May 3, 2021,** at approximately 9:41 a.m., a series of calls and text messages (Ref.#s 353, 355, 357, 359, 363, 365, 367, 369, 371, 373, 375, 377, 379, 381, 383, 385, 387, 389, 391, 393, 395, 401, 403, 405, 415, 419, 420) were lawfully intercepted during the execution of an eavesdropping warrant over telephone number (585) 360-6846, used by DUBLIN, from an unknown male who was later identified as a person with initials R.B., using telephone number (585) 443-9109. In sum and substance, R.B. text messages DUBLIN and writes that he's coming up and needs "hard, soft and boy." These terms are commonly used drug jargon that refer to crack cocaine, powder cocaine and heroin or fentanyl, respectively. DUBLIN directs R.B. to "Birch." Based on my training, experience, and knowledge of this investigation, I believe DUBLIN was telling R.B. to come to 5 Birch Crescent to purchase the requested drugs.

97.     On the same date, at approximately 10:30 a.m. members of the New York State Police were conducting surveillance in the area of 5 Birch Crescent. The troopers observed an individual later identified as R.B. exit the passenger side of a vehicle parked near 5 Birch

Crescent and then enter the location. Shortly thereafter, R.B. left 5 Birch Crescent and got back into the same vehicle, which began to drive away. A vehicle and traffic stop was conducted by NYSP Troopers who identified R.B. and recovered small baggies containing suspected cocaine and suspected fentanyl.

98.    **On May 7, 2021**, at approximately 12:08 p.m., an outgoing text message (Ref.# 3808) was intercepted over telephone number (585) 260-4929 used by GRANISON to (585) 360-6846 used by DUBLIN. The contents of this text message are transcribed below:

> **TG:**   Yes, I have your lawn more [*sic*] that I borrow let me know when you want me to bring it

99.    **On May 7, 2021**, at approximately 12:10 p.m., an incoming text message (Ref.# 3810) was intercepted over telephone number (585) 260-4929 used by GRANISON from (585) 360-6846 used by DUBLIN, which read:

> **DD:**   Kool

100.    **On May 7, 2021**, at approximately 12:13 p.m., an outgoing text message (Ref.# 3812) was intercepted over telephone number (585) 360-6846 used by DUBLIN from (585) 260-4929 used by GRANISON, which read:

> **TG:**   Just text me when you want me to pull up

101.    **On May 7, 2021**, at approximately 8:05 p.m., an incoming telephone call (Ref.# 3860) was lawfully intercepted over telephone number (585) 360-6846 used by DUBLIN from (585) 260-4929 used by GRANISON. The contents of this call are described below:

**TG:    Timothy Granison**
**DD:    Dkeidron Dublin**

[Start]

DD:    You tell me

TG:    Alright, you tell me…. I can come there… it's up to you.

DD:    I am moving around… so you tell me

TG:    Ammm I am bout to go to ummm… shoot… ummm… damn, about to get me a cheeseburger from Wendy's or something

DD:    Why don't you huh…Wendy's or Delta Sonic

TG:    Alright

DD:    Main Street or

TG:    Yea…Yea…Yea…Yea

DD:    I will meet you at Delta

TG:    Right

[End]

102.    **On May 7, 2021**, at approximately 8:23 p.m. video surveillance obtained from the Delta Sonic located on 718 East Ridge Road shows GRANISON's vehicle parked near pump number one. At the same time a dark colored Dodge Durango pulls up to pump number two. DUBLIN can be seen exiting the back seat of the Dodge Durango and entering GRANISON's vehicle. A few seconds later DUBLIN exits GRANISON's vehicle and returns to the Dodge Durango, which then pulls away. Based on my training, experience and knowledge of this investigation, I believe that GRANISON met with DUBLIN at the Delta Sonic to resupply him with a quantity of narcotics. No lawn mower was observed during the brief meeting at Delta Sonic described above. I believe that lawn mower was a coded phrase

meaning a quantity of narcotics, most likely cocaine.

103.   **On May 14, 2021**, at approximately 2:34 p.m., an incoming telephone call (Ref.# 4353) was lawfully intercepted over telephone number (585) 260-4929 used by GRANISON from (585) 360-6846 used by DUBLIN, pursuant to an eavesdropping warrant. The contents of the call are transcribed below:

**TG:   Timothy Granison**
**DD:   Dkeidron Dublin**

[Start]

TG:   [unintelligible]

DD:   Shit I need an Uber you gotta go get an oil change first?

TG:   Ahh not really I'm just waiting for my daughter to get here on the bus.

DD:   Oh, okay but you already?

TG:   Yeah, yeah, yeah, yeah.

DD:   Oh alright.

TG:   Alright.

DD:   Alright.

TG:   I'll hit you as soon as she get here she be here by like 3:05, 3:10.

DD:   Alright that's cool.

TG:   Alright.

DD:   Alright bye.

[End]

104.   **On May 14, 2021**, at approximately 2:34 p.m., an incoming telephone call (Ref.# 4358) was lawfully intercepted over telephone number (585) 260-4929 used by GRANISON from (585) 360-6846 used by DUBLIN, pursuant to an eavesdropping warrant.

The contents of this call are transcribed below:

**TG:   Timothy Granison**
**DD:   Dkeidron Dublin**

[Start]

DD:   Yo

TG:   Where you at

DD:   I'm at the house

TG:   Oh yeah

DD:   Yeah

TG:   Oh, okay, I'm about to drop this uuhmm, this ahh sticker off

DD:   Alright

TG:   Cause I got my daughter with me but I don't got, I got to get some tape, oh I do got tape, alright.

DD:   Alright

TG:   Alright

[End]

105.   **On May 14, 2021**, at approximately 3:19 p.m. Investigator Tom Walton and Senior Investigator Scott Shepard observed Timothy GRANISON leave 93 Woodman Park, Rochester, New York, operating his Toyota Sequoia, with his young daughter in the front passenger seat of the vehicle. The troopers continued surveillance and observed GRANISON drive directly to 5 Birch Crescent. Surveillance officers observed GRANISON park in front of 5 Birch Crescent and retrieve a box from the back seat of his vehicle. The surveillance team observed DUBLIN walk towards GRANISON's vehicle at which point both GRANISON and DUBLIN entered the back seat of the vehicle, out of sight of the officers. Shortly thereafter, the surveillance team observed DUBLIN get out of GRANISON's vehicle and

walk back to 5 Birch Crescent while holding a bag. GRANISON drove away from the location a few moments later. Based on my training, experience and knowledge of this investigation, I believe GRANISON supplied DUBLIN with a quantity of narcotics on this date when they met up in front of 5 Birch Crescent. Prior to this meeting DUBLIN called GRANISON and asked for an "Uber." As described in other portions of this affidavit, I believe that "Uber" is a code word used by GRANISON and DUBLIN meaning a quantity of narcotics.

106.    **On May 16, 2021**, beginning at approximately 10:21 a.m. a series of text messages and calls, (Ref.#s 5904, 5912, 5916, 5918, 5963) were lawfully intercepted pursuant to an eavesdropping warrant over telephone number (585) 360-6846 used by DUBLIN and telephone number (585) 260-4929 used by GRANISON. In sum and substance DUBLIN asks GRANISON if he is "up and at it yet" to which GRANISON responds "10 min." A related telephone call (Ref.# 5993) was intercepted in which GRANISON told DUBLIN to come out, to which DUBLIN responds, "I'm out here let me back up." Shortly thereafter, GRANISON was observed via surveillance as he arrived at 5 Birch Crescent in a black, 2013 Lincoln MKS bearing New York Registration JRE 6888. A records check revealed that this vehicle is registered to an individual with the initials L.W. at 93 Woodman Park, Rochester, New York.  Timothy GRANISON is known to be married to L.W.

107.    Shortly after GRANISON arrived at 5 Birch Crescent, the surveillance team observed DUBLIN exit a Dodge Durango and approach the driver's side of the Lincoln MKS. GRANISON and DUBLIN had a short exchange and then GRANISON left the location, while DUBLIN returned to the Dodge Durango. At approximately 11:45 a.m. the surveillance team observed the Lincoln MKS back at 93 Woodman Park.

108.    Based on my training, experience and knowledge of this investigation, I believe DUBLIN and GRANISON met in front of 5 Birch Crescent on this date in order to conduct a narcotics transaction.

109.    **On May 19, 2021**, at approximately 3:15 p.m., a telephone call (Ref.# 4784) was intercepted over telephone number (585) 260-4929 used by GRANISON from (585) 360-6846 used by DUBLIN, pursuant to an eavesdropping warrant. The contents of this call are transcribed below:

**TG:    Timothy Granison**
**DD:    Dkeidron Dublin**

[Start]

DD:    Yoooo

TG:    Where you at [unintelligible]

DD:    At the crib dog

TG:    Mannn. Alright, I'll pull up on you in a few minutes

DD:    Just few minutes cause I'm moving around

TG:    Oh, few minutes is five minutes

DD:    Oh, alright

TG:    Alright

[End]

110.    Based on my training, experience, and knowledge of this investigation, I believe DUBLIN and GRANISON were discussing an imminent narcotics transaction.

## SEARCH WARRANTS

111.    On or about May 17, 2021 and May 18, 2021, the Hon. Michael Dollinger, Monroe County Court Judge, issued search warrants for a number of locations relating to this investigation including: 230 Glenwood Avenue, Rochester, New York; 14 Elwood Drive, Rochester, New York; 62 Clifton Street, Rochester, New York; 2013 Norton Street, Rochester, New York; and 5 Birch Crescent, Apartment 3, Rochester, New York, among other locations. These search warrants were executed throughout the afternoon and evening of May 19, 2021. The results from these search warrant executions are described below.

## 5 BIRCH CRESCENT

112.    A search warrant for 5 Birch Crescent (Apartment No. 3), Rochester, New York, was executed on May 19, 2021 in conjunction with surveillance operations. More specifically, after the 3:15 p.m. telephone call (Ref.# 4784) between GRANISON and DUBLIN described above, the New York State Police were anticipating an imminent narcotics transaction between the targets at 5 Birch Crescent. At approximately 3:23 p.m. Timothy GRANISON's Toyota Sequoia was observed pulling up to 5 Birch Crescent. Shortly thereafter, DUBLIN was observed exiting 5 Birch Crescent, whereupon he walked to GRANISON's vehicle and entered through the front passenger side door. At this point law enforcement moved in quickly and detained both GRANISON and DUBLIN. A "31" or a bag of cocaine equaling approximately 31 grams was found wrapped in a paper towel on the floor of GRANISON's vehicle, in the backseat behind the center armrest area. DUBLIN was found in possession of approximately $1,241.00 in U.S. currency. Based on my training, experience and knowledge of the investigation, I believe DUBLIN was in the process of

purchasing the "31" from GRANISON, when both men were taken into custody.

113.   After GRANISON and DUBLIN were secured, a thorough search of the premises was conducted. 5 Birch Crescent is broken into three apartments. The third apartment is the residence of DUBLIN. Among other items recovered during this operation was DUBLIN's driver's license, which listed 5 Birch Crescent, Apartment 3, Rochester, New York as his residence. In the kitchen of 5 Birch Crescent, Apartment 3, to the right of the stove in an upper drawer, the State Police located a quantity of cocaine base, a razor blade, a scale and numerous new and unused plastic baggies commonly used to package narcotics. Approximately $400.00 in U.S. currency was found on a wine rack in the kitchen. In the kitchen closet, multiple new and unused glassine baggies were located on the fourth shelf. On the top shelf of the same closet, the State Police located a Walther P22, .22 caliber semiautomatic pistol bearing serial No. WA017726. The firearm was unloaded but next to the gun was an appropriate magazine that was loaded with one round of .22 caliber ammunition. Based on my training and experience, I am aware of the fact that drug traffickers or dealers will often unlawfully carry or possess firearms in order to protect themselves, their narcotics, and/or proceeds from narcotics sales from being forcibly taken by others. Drug dealers are frequently the target of robberies, as they are known to be in possession of valuable narcotics or large amounts of U.S. currency due to the nature of their business. As such, I believe DUBLIN possessed this firearm in the furtherance of a drug trafficking crime for which he could be prosecuted in a Court of the United States, namely, violations of Title 21, United States Code, Sections 846 and 841(a)(1).

**62 CLIFTON STREET**

114.     On May 19, 2021 at approximately 6:25 p.m., members of the investigative team executed a search warrant for 62 Clifton Street, Rochester, New York. No individuals were encountered in the premises. After the location was secured a thorough search of the premises was conducted, during which law enforcement located the following property of an evidentiary nature: approximately 877.22 grams of bulk cocaine were located on the floor of a storage room. Approximately 558.44 grams of what appeared to be bulk quantities of cocaine base were recovered on the floor in one of the location's bedrooms. These substances were later field tested by properly trained members of the investigative team, and each field test returned a positive result for the presence of cocaine. Additional materials indicative of drug trafficking were also recovered from 62 Clifton Street including: four boxes of baking soda, commonly used as a cutting agent; three digital scales, commonly used by drug dealers to weigh out various quantities of narcotics; new and unused small plastic baggies, frequently used to package individual quantities of narcotics, including cocaine and cocaine base. Beakers and other paraphernalia associated with cooking cocaine base were found in the kitchen with noticeable amounts of what appeared to be cocaine residue. The location was equipped with a security camera system I believe to be capable of recording and displaying video in real time, as well as the hard drive the device was connected to. The security cameras were connected to a television mounted to a wall in the living room. Still images of Jason SIPLIN could be observed on the security camera display. Based on my training, experience and knowledge of this investigation, the quantities of cocaine and cocaine base recovered from 62 Clifton Street clearly demonstrate an intent to distribute controlled substances. Jason SIPLIN was not at the location at the time the search warrant was executed. SIPLIN was

taken into custody at 26 North Clinton Avenue, Rochester, New York, by supporting officers.

## 230 GLENWOOD AVENUE

115.    Members of the investigative team also executed a search warrant for 230 Glenwood Avenue on May 19, 2021, at approximately 6:19 p.m. Upon breaching the location, law enforcement made contact with a number of individuals including Ernest GAMBLE and Lytrice JACKSON, among others. Everyone inside of the house was called down from the upstairs portion of the premises, and this process took several minutes to safely complete. It appears that individuals within the location were in the process of flushing narcotics down an upstairs toilet, as 81 small plastic baggies containing cocaine base were recovered from an upstairs bathroom toilet bowl. Once 230 Glenwood Avenue was secured, law enforcement conducted a thorough search of the premises. Eight (8) baggies of cocaine base were found spread around the floor of the living room. Five (5) baggies of cocaine base were located on a kitchen counter. Walkie-talkies were recovered on the kitchen floor and living room floor. A closed-circuit television system and DVR were recovered. The system's cameras were mounted throughout the premises, facing out to areas surrounding 230 Glenwood Avenue. Three (3) digital scales were located in the living room on top of a table. Two (2) digital scales were located in the upstairs master bedroom. Mail and other personal paperwork were recovered from the upstairs master bedroom addressed to Lytrice JACKSON. At least one piece of bank mail was addressed to Lytrice JACKSON at 230 Glenwood Avenue. A sample of the cocaine base recovered from this location was field tested and returned a positive result for the presence of cocaine. In total, approximately $10,888.00 in U.S. currency was recovered from the premises or individuals within the premises. Ernest GAMBLE had approximately $5,470.00 in U.S. currency on his person when taken into

custody. Investigators found approximately $1,078.00 in U.S. currency on the kitchen floor and $1,407.00 in U.S currency on the living room floor. This large amount of U.S. currency is consistent with narcotics trafficking, particularly for a drug house that services numerous hand-to-hand transactions on a daily basis. Based on my training and experience, drug traffickers that manage drug houses such as 230 Glenwood Avenue will routinely pick up money from the drug house as it accumulates each day, and bring that money to another, more secretive location.

### 2013 NORTON STREET

116.    On May 19, 2021 at approximately 8:39 p.m. a search warrant was executed at the premises known as 2013 Norton Street, Rochester, New York, the residence of Jason SIPLIN, JR. As agents were preparing to execute the search warrant for this location, SIPLIN, JR. left the premises, entered a Nissan Sentra, and began driving away. The search warrant also authorized the search of Jason SIPLIN, JR., the Nissan Sentra he was traveling in, and a Subaru Outback that was parked at the location. Law enforcement stopped SIPLIN, JR. as he drove away from the location in the Nissan Sentra and located approximately $62,581.00 in U.S. currency inside of the vehicle, bundled with rubber bands. Approximately $300.00 U.S. currency was recovered from SIPLIN, JR.'s person, along with individually packaged baggies of cocaine. Another 8.5 grams of cocaine were found within the center armrest of the other vehicle (that is, the parked Subaru Outback). Paperwork in SIPLIN, JR.'s name, including the vehicle's registration, was found in the Outback.

117.    A thorough search of 2013 Norton Street was conducted, and the following property of an evidentiary nature was recovered: approximately 250 grams of cocaine was

found throughout house, the bulk of which was located in the basement; numerous new and unused plastic Ziploc style baggies commonly used to package narcotics for individual sale; paperwork in the name of both Jason SIPLIN and Jason SIPLIN, JR.; City of Rochester records for 8 Rainier Street; and numerous cellular phones. Samples from the cocaine recovered from this location, the vehicles, and SIPLIN, JR.'s person were field tested, all of which returned a positive result for the presence of cocaine. Based on my training and experience, the large quantities of cocaine, packaging materials, and U.S. currency are all indicative of an intent to distribute.

## 14 ELWOOD DRIVE

118.    On May 19, 2021 at approximately 6:39 p.m. members of the investigative team executed a search warrant for 14 Elwood Drive, Rochester, New York. Over the course of this long-term investigation, this location has been identified as Jason SIPLIN'S residence, along with his wife N.F. However, there was no one inside of the house when officers executed the warrant. After 14 Elwood Drive was secured a thorough search was conducted and law enforcement recovered the following property of an evidentiary nature: a digital scale with white residue along with small Ziploc style baggies were located in the kitchen; a small amount of cocaine base was located in the basement; numerous documents in the name of Jason SIPLIN evidencing his dominion and control over the residence were recovered, and a total of $62,593.00 in U.S. currency was recovered. The bulk of the U.S. currency was recovered from a black bag concealed in the ceiling of a bathroom.

## INTERVIEW OF JASON SIPLIN

119.    After being taken into custody, SIPLIN was transported to RPD's Public Safety Building where he was placed in an interview room. The defendant was advised of his *Miranda* rights, which he voluntarily waived. Thereafter the defendant was interviewed regarding his involvement in the drug trafficking activities at the various locations described in this affidavit. The defendant admitted that he is in fact a drug dealer and that he sells drugs out of the Glenwood location (that is, 230 Glenwood Avenue). The defendant also confirmed that he stores and prepares crack cocaine for street sale at the Clifton Street location. He estimated that he sells approximately one kilogram of cocaine each week. He denied being part of a narcotics conspiracy. He admitted that the U.S. currency recovered from the 14 Elwood Drive belonged to him.

## INTERVIEW OF JASON SIPLIN, JR.

120.    After being taken into custody at 2013 Norton Street, SIPLIN, JR. was transported to RPD's Public Safety Building. Prior to being interviewed, Jason SIPLIN, JR. was advised of his *Miranda* rights, which he voluntarily waived. The defendant was then interviewed in connection with the drug trafficking activities described throughout this affidavit. SIPLIN, JR. admitted that the cocaine recovered from his person, vehicle and house belonged to him. He admitted to being aware of the approximately $62,000.00 in U.S. currency recovered from his vehicle. He acknowledge being part of a group of individuals that sold narcotics out of 230 Glenwood, and that the group utilized 62 Clifton Street as a storage and preparation location. SIPLIN, JR. indicated that he had approximately four 62s of cocaine in his residence that were ultimately supposed to have been sold out of 230 Glenwood

Avenue. When asked why the group stopped utilizing hotel rooms to prepare and package cocaine base, SIPLIN, JR., stated that he did not know why they had stopped doing so. SIPLIN, JR. advised law enforcement that he personally sells multiple 62s of crack cocaine on a daily basis.

## INTERVIEW OF ERNEST GAMBLE

121.    After Earnest GAMBLE was taken into custody at 230 Glenwood Avenue, GAMBLE was transported to RPD's Public Safety Building where he was placed in an interview room. The defendant was advised of his *Miranda* rights, which he voluntarily waived. The defendant was then interviewed in connection with the drug trafficking activities described throughout this affidavit. The defendant admitted to being one of a number of individuals that sold crack cocaine out of 230 Glenwood Avenue. GAMBLE did not wish to identify these other individuals but did explain his business model and profit margin. He indicated that he would purchase 62s of cocaine base from an individual who was in charge. The price he paid for each 62 was essentially a retail price, but GAMBLE indicated that he still profited approximately "two bands" (that is, $2,000.00 U.S. currency) per 62. GAMBLE said that he sold approximately two 62s every day for the last six to seven months. GAMBLE acknowledged that he believed he had sold roughly ten (10) kilograms of cocaine base over that time period.

## CONCLUSION

122.    Based on the foregoing information, your affiant submits that probable cause exists to believe that on or about and between the month of August 2020, and May 19, 2021, in the Western District of New York, Jason SIPLIN a/k/a J, Jason SIPLIN, JR. a/k/a Mush,

Ernest GAMBLE a/k/a Dred, Lytrice JACKSON a/k/a Storm, Timothy GRANISON, and Dkeidron DUBLIN, committed violations of Title 21, United States Code, Sections 841(a)(1), 841(b)(1)(A), 841(b)(1)(B), and 841(b)(1)(C) **all in violation of Title 21, United States Code, Section 846** (conspiracy to possess, with intent to distribute, and to distribute: at least 280 grams of cocaine base, a Schedule II controlled substance; and at least 500 grams of cocaine, a Schedule II controlled substance). Additionally, I submit there is probable cause to believe that on or about May 19, 2021, in the Western District of New York, Dkeidron DUBLIN committed a violation of **Title 18, United States Code, Section 924(c)(1)(A)(i)** (possession of a firearm in furtherance of a drug trafficking crime).

MATTHEW D. HUDSON
Special Agent
Homeland Security Investigations

Affidavit and Criminal Complaint submitted electronically
by email in .pdf format. Oath administered, and contents
and signature attested to me and before me as true and accurate
telephonically pursuant to Fed.R.Crim.P. 4.1 and 4(d)
on June 3, 2021.

HONORABLE MARK W. PEDERSEN
United States Magistrate Judge